IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Monster Productions, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 6:06-293-HMH |
| | ) | |
| vs. | ) | |
| | ) | **OPINION & ORDER** |
| Monster Cable Products, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Monster Cable Products, Inc.'s ("Monster Cable") motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. For the reasons set forth below, the court denies Monster Cable's motion.

### I. STATEMENT OF THE FACTS

Monster Productions, LLC, now known as Monster Daddy, LLC ("Monster Daddy"), is a holding company "engaged in the licensing of intellectual property and other assets for use in the cleaning, marine, and automotive industries." (Pl.'s Mem. Opp'n Mot. Dismiss 1.) Monster Cable manufactures "electronic cable accessories, such as speaker wire, audio, video and computer cables, electronic connectors and amplifiers, small consumer electronics, cable connectors and satellite receivers." (Id. 2.) Monster Daddy alleges that Monster Cable "claims ownership of a variety of federal registrations and pending applications for the mark MONSTER alone and or in combination with other terms that cover audio cable products, batteries, furniture and automotive products, among others." (Compl. ¶ 11.)

On January 16, 2004, counsel for Monster Cable, Matthew Powelson ("Powelson"), sent a letter ("January Letter") to Jeffrey Sladkus ("Sladkus"), counsel for Doc Haas, LLC d/b/a Xtreme Brands ("Doc Haas"), informing Doc Haas that Monster Cable "has an extensive intellectual property protection and enforcement program, comprising over fifty trademark registrations." (Id. Ex. 1 (January Letter 1).)  In the letter, Monster Cable notified Doc Haas that it had become aware of Doc Haas's trademark application for two marks, SEA MONSTER (United States Trademark Application Serial Number 78/325,757) and SEA MONSTERS (United States Trademark Application Number 78/325,763), and alleged that Doc Haas's "proposed mark [sic] violates [Monster Cable's] established rights."  (Id.)  Finally, Monster Cable alleged that the two marks "will likely cause confusion in the marketplace" and that the trademark applications were subject to opposition on trademark infringement and trademark dilution grounds.  (Id. Ex. 1 (January Letter 1-2).)  The letter concluded with a request that Doc Haas "voluntarily withdraw" the applications.  (Id. Ex. 1 (January Letter 2).)

Powelson reiterated Monster Cable's claims and demands in a telephone conference with Sladkus on February 10, 2004.  (Compl. ¶ 16.)  On March 9, 2004, Powelson wrote a second letter ("March Letter") to Sladkus, attempting to resolve the issue by requesting that Doc Haas assign the SEA MONSTER and SEA MONSTERS marks to Monster Cable, and, in turn, Monster Cable would license the marks back to Doc Haas.  (Id. ¶ 17 & Ex. 2 (March Letter).)  Otherwise, Monster Cable "would continue to monitor [Doc Haas'] use and prosecution history and reserve all rights to enforce [Monster Cable's] rights in the future."  (Id. Ex. 2 (March Letter).)

Powelson contacted Sladkus again by telephone in or about July 2005, reiterating the demand in the January Letter that Doc Haas voluntarily withdraw its trademark applications. (Id. ¶ 18.) Doc Haas refused. (Id.) On July 14, 2005, Monster Cable requested an extension of time to oppose Doc Haas's application for SEA MONSTERS from the United States Patent and Trademark Office ("PTO"). (Compl. ¶ 19.) Sladkus allegedly contacted Powelson (or another attorney representing Monster Cable) on July 26, 2005, in an attempt to resolve the issue, but the telephone call was not returned. (Id. ¶ 20.)

The PTO granted Monster Cable's request, but on September 13, 2005, the deadline for Monster Cable to formally oppose the SEA MONSTERS trademark application passed without opposition by Monster Cable. (Id. ¶ 21, Pl.'s Mem. Opp'n Mot. Dismiss 4.) On October 25, 2005, the PTO issued a notice of allowance for the SEA MONSTERS mark.

On November 11, 2005, Monster Cable filed a letter with the PTO protesting the PTO's allowance of the SEA MONSTERS mark. (Compl. ¶ 22.) Powelson contacted Sladkus on January 19, 2006, to inform him that Monster Cable had taken notice of and generally objected to Monster Daddy's "recent applications to register its Monster Marks." (Pl.'s Mem. Opp'n Mot. Dismiss 1 n.1 & Ex. C (Sladkus Aff. ¶ 7).) In that conversation, Sladkus informed Powelson that he was aware of Monster Cable's tactics, and that Monster Daddy would not consider any demand to abandon or transfer any of its Monster Marks. (Compl. ¶ 23.) Monster Daddy alleges that Monster Cable responded to Sladkus's statement by claiming that Monster Daddy's position was "unacceptable." (Id.)

3

Doc Haas and Monster Daddy merged in January 2006, and Monster Daddy is now the successor in interest to all right, title, and interest in Doc Haas's trademarks, including SEA MONSTER and SEA MONSTERS.  (Id. 3 n.2.)

On January 27, 2006, Monster Daddy filed the instant declaratory judgment action against Monster Cable.  Monster Daddy alleges that an "actual, present and justiciable controversy has arisen" between it and Monster Cable, and contends that use of its Monster Marks, which includes 21 marks, all of which have "MONSTER" in the mark and are defined in the complaint in (paragraph 9), "does not and will not infringe, dilute, and/or violate any valid propriety [sic] right Defendant claims in its Monster trademarks."  (Id. ¶ 32.)  Monster Daddy "seeks a declaratory judgment from this Court that its use of the Monster Marks in connection with its various products is not likely to cause confusion, mistake, or deception with and does not infringe or dilute Defendant's Monster trademarks."  (Id. ¶ 35.)  As such, Monster Daddy requests declaratory and injunctive relief to prevent Monster Cable from asserting or assisting others in asserting or challenging Monster Daddy's use or registration of its Monster Marks, as well as costs and attorney's fees.  (Id. ¶ 35.)

On June 19, 2006, Monster Cable filed the instant motion to dismiss for lack of subject matter jurisdiction.  Monster Daddy responded on July 7, 2006, and Monster Cable replied July 17, 2006.  Monster Daddy filed a sur-reply on July 26, 2006.

## II. Discussion of the Law

Monster Cable has moved to dismiss this action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, alleging that the court lacks subject matter jurisdiction to consider the merits of the case.  Monster Cable contends that no actual case or controversy exists for this

4

court to consider, such that the court may declare the rights of the parties under the Declaratory Judgment Act, 28 U.S.C. § 2201.

A two-prong test exists to determine whether an actual case or controversy exists to give the court subject matter jurisdiction over a declaratory judgment action involving trademarks. Windsurfing Int'l Inc. v. AMF Inc., 828 F.2d 755, 757 (Fed. Cir. 1987). "First, the declaratory plaintiff must have a real and reasonable apprehension of litigation." Id. "Second, the declaratory plaintiff must have engaged in a course of conduct which brought it into adversarial conflict with the declaratory defendant." Id.

Monster Cable acknowledges that Monster Daddy has used its marks in commerce as of 2000, and Monster Daddy alleges that it has invested substantial amounts of money in marketing and branding its products and services to be sold and offered under the trademarks. Monster Cable argues that Monster Daddy fails to satisfy the first prong, and does not argue that Monster Daddy fails to meet the second prong. Accordingly, after review, the court finds that Monster Daddy has met its burden with respect to the second prong. See Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) ("When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff," and, "[i]n determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.")

Monster Cable contends that no case or controversy exists because Monster Daddy has no reasonable apprehension of litigation. To meet its burden on the first prong, Monster Daddy

must demonstrate "a course of conduct that implies an 'imminent threat of impending legal action' by the defendant." Texas v. West Pub. Co., 882 F.2d 171, 176 (5th Cir. 1989) (quoting Goodyear Tire & Rubber, Inc. v. Releasomers, Inc., 824 F.2d 953, 956 (Fed. Cir. 1987)). Although Monster Daddy does not allege that Monster Cable explicitly threatened to file suit against Monster Daddy, "[a] reasonable apprehension of suit can arise indirectly . . . without an overt and express threat." Superguide Corp. v. Kegan, 987 F. Supp. 481, 484 (W.D.N.C. 1997).

In determining whether Monster Daddy had a reasonable apprehension of imminent legal action, the court must consider the totality of the circumstances. Polaroid Corp. v. Berkey Photo, Inc., 425 F. Supp. 605, 607 (D.C. Del. 1976). However, "the finding of an actual controversy should be determined with some liberality" in the context of a declaratory plaintiff seeking resolution of a trademark dispute. Starter Corp. v. Converse, Inc., 84 F.3d 592, 596 (2d Cir. 1996).

Monster Daddy argues that a combination of factors support a reasonable apprehension of imminent suit: (1) Monster Cable's January Letter, (2) Monster Cable's numerous requests for extension of time to oppose Monster Daddy's registration of trademarks with the PTO, (3) Monster Cable's carefully-worded correspondence in which it claimed it vigorously protects its rights and promised to monitor Monster Daddy's use and prosecution history of the SEA MONSTER and SEA MONSTERS marks, and (4) Monster Cable's "litigious history in policing its MONSTER marks." (Pl.'s Mem. Opp'n Mot. Dismiss 9.) Recognizing the policy behind the Declaratory Judgment Act to allow parties to adjudicate their disputes before either party suffers great damage, Monster Daddy's alleged investment in the Monster Marks and alleged harm arising from uncertainty about its rights to use the Monster Marks, the guidance

from the United States Court of Appeals for the Second Circuit in Starter, and the totality of the circumstances, the court finds that an actual case or controversy existed when Monster Daddy filed the instant action. Capital One Fin. Corp. v. Drive Fin. Servs. LP, No. Civ.A.1:06-279, 2006 WL 1555831, at *7 (E.D. Va. May 12, 2006) ("[D]eclaratory judgment seems quite appropriate in a situation such as this so that parties can adjudicate their disputes before either suffers great damage."); Starter, 84 F.3d at 596.

(1) January Letter

In the January Letter, Monster Cable states that it considers Monster Daddy's SEA MONSTER and SEA MONSTERS marks to violate Monster Daddy's established trademark rights. (Compl. Ex. 1 (January Letter 1).) Moreover, Monster Cable explained that it intended to oppose Monster Daddy's trademark application for the marks on the grounds of trademark infringement and dilution and stated a prima facie case for trademark infringement in explaining its position. (Id.) Although it makes no explicit reference to bringing suit, Monster Cable's carefully-worded letter supports Monster Daddy's apprehension of suit, and courts have so found in the past. Cf. Chesebrough-Ponds, Inc. v. Faberge, Inc., 666 F.2d 393, 396-97 (9th Cir. 1982) (noting the significance of a declaratory defendant stating a prima facie case in a cease-and-desist letter); but see Dunn Computer Corp. v. Loudcloud, Inc., 133 F. Supp. 2d 823, 827 (E.D. Va. 2001).

Monster Cable relies heavily on Dunn to argue that its letter was merely an invitation to settle the dispute. While the court in Dunn held that a cease-and-desist letter much like the January March Letter was insufficient to support a finding of an actual case or controversy, the Dunn court carefully noted that this was the defendant's sole action. Id. Moreover, the Dunn

7

court acknowledged that the defendant had no trademarks, so a threat to bring a trademark infringement suit could not be realized. Id. at 828. In the instant case, as set forth below, many other acts by Monster Cable following the January Letter support Monster Daddy's apprehension of suit, and it is undisputed that Monster Cable has numerous trademarks containing "Monster" on which it could base a trademark infringement suit. Hence, Dunn is easily distinguishable.

(2) Monster Cable's Requests for a Motion for Extension to File Opposition

Monster Daddy asserts that "Monster Cable has routinely filed Extensions of Time to Oppose Monster Daddy's registration of its Monster Marks with the United States Patent and Trademark Office." (Pl.'s Mem. Opp'n Mot. Dismiss Ex. C (Sladkus Aff. ¶ 11).) In addition to filing a motion for extension of time to oppose the SEA MONSTERS mark in 2005, Monster Daddy claims that Monster Cable has requested additional time to oppose Monster Daddy's applications for MONSTER GLUE twice, MONSTER PRODUCTIONS twice, and also MONSTER ARMY, all between May 18, 2006, and June 30, 2006. ( (Sladkus Aff. ¶¶ 18-20, 22).)

There is no showing that Monster Cable has formally opposed the registration of any of Monster Daddy's marks, despite filing numerous proceedings opposing marks held by other parties. Nonetheless, Monster Cable has threatened to oppose Monster Daddy's trademarks by filing numerous requests for extension of time to oppose Monster Daddy's marks in the past year, and, after the time expired to oppose the SEA MONSTER and SEA MONSTERS marks, notifying Monster Daddy that it had filed a "general objection" to all of Monster Daddy's pending trademark applications containing "Monster." (Id. Ex. 1 (Sladkus Aff. ¶ 7 & Ex G

(Letter from Sladkus to Robert Payne of 4/20/06 at 1).)  When asked which of Monster Daddy's marks were objectionable to Monster Cable, Powelson "essentially stated that a better question is which of Monster Daddy's Monster Marks are not objectionable." (Id.)  Moreover, in response to Sladkus's claiming that Monster Daddy would not abandon or transfer its rights in the Monster Marks to Monster Cable, Powelson indicated that Monster Daddy's position was "unacceptable." (Id. Ex. 1 (Sladkus Aff. ¶¶ 8).)  These events preceded Monster Daddy's filing of the complaint in the instant action.

After Powelson allegedly made these statements in January 2006, Sladkus claims that he sought clarification from Monster Cable as to the nature of its objections. (Id. Ex. 1 (Sladkus Aff. ¶¶ 10-17).)  Sladkus asserts that he contacted Powelson several times via email, telephone, and mail in an effort to better understand and evaluate Monster Cable's concerns and to attempt to attempt to resolve the matter without having to proceed in court. (Id.)  As exhibits to his affidavit, Sladkus attached several emails and two letters sent between January 19, 2006, and April 20, 2006, which support his claims. (Pl.'s Sur-reply Opp'n Mot. Dismiss Ex. 1 (Sladkus Aff. Exs. C, D, E, F, & G).)

Hence, the evidence in the record shows that although Monster Cable has yet to file a formal opposition to one of Monster Daddy's trademark applications, Monster Cable filed a general objection to Monster Daddy's marks containing "Monster," failed to respond to Monster Daddy's repeated attempts to clarify Monster Cable's objections to Monster Daddy's marks, and has sought additional time to oppose several of Monster Daddy's marks, including multiple requests in May and June 2006.  Additionally, the record shows that following the January Letter but before Monster Daddy served Monster Cable with the complaint, attempts to settle the matter failed, and Monster Cable allegedly did not respond to Monster Daddy's last attempt

9

to settle. ((Pl.'s Sur-reply Opp'n Mot. Dismiss Ex. 1 (Sladkus Aff. ¶¶ 15-17)); cf. Dunn, 133 F. Supp. 2d at 828 n.12 (referencing cases in which courts found that a case or controversy existed based on cease-and-desist letters followed by a failed attempt to settle before initiating litigation). Especially in light of Monster Cable's statement in the January Letter that it considered Monster Daddy's marks to violate its rights, Monster Cable's actions between 2004 and 2006 certainly support a reasonable apprehension of suit.

(3) Carefully-Worded Correspondence and
(4) Vigorous Policing and Protection of its Trademarks

Furthermore, the court concludes that the wording of Monster Cable's correspondence with Monster Daddy and vigorous policing and protection of its trademarks support Monster Daddy's reasonable apprehension of suit. As noted before, Monster Cable has not explicitly threatened suit against Monster Daddy. However, Monster Cable stated a prima facie case for trademark infringement in the January Letter, informed Monster Daddy that it considers Monster Daddy's SEA MONSTER and SEA MONSTERS marks to violate its rights, and notified Monster Daddy that Monster Cable "vigorously protects its exclusive rights" and has "an extensive intellectual property protection and enforcement program." (Compl. Ex. 1 (January Letter 1).) Monster Cable's actions over the last two years undermine its assertion that its opposition to Monster Daddy's trademarks is decreasing in intensity and that Monster Cable was more likely to file suit against Monster Daddy in 2004 than today. Furthermore, the court notes that nowhere in the record does Monster Cable expressly state that it has no intent to file

suit against Monster Daddy.[1]

Additionally, Monster Cable's actions with respect to other parties seeking to use trademarks containing "Monster" support Monster Daddy's apprehension of suit. Generally, a defendant's actions with respect to other, unrelated third parties may not serve to support a reasonable apprehension of suit. See West Pub., 882 F.2d at 176; Indium Corp. of America v. Semi-Alloys, Inc., 781 F.2d 879, 883 (Fed. Cir. 1985) ("The prior patent litigation initiated by Semi-Alloys in 1975, against two other parties unconnected with Indium, was too remote to make Indium's apprehension of further litigation in 1982 reasonable, insofar as necessary to give standing to bring a declaratory action on that basis."). However, the plaintiff in West Publishing referenced only one suit, and the court in Indium considered a few suits that were filed seven years before the plaintiff in Indium brought suit. Id. In the instant case, Monster Daddy has alleged and supported–and Monster Cable has referenced–a longstanding, robust trademark protection campaign involving opposition to marks containing "Monster." While it contests the number of trademark infringement suits Monster Daddy alleges that it has brought,

---

[1]The court recognizes that "subject matter jurisdictional facts must be pleaded, and proved when challenged, and that later events may not create jurisdiction where none existed at the time of filing." Spectronics Corp. v. H.B. Fuller Co., Inc., 940 F.2d 631, 635 (Fed. Cir. 1991), abrogation on other grounds recognized in Liquid Dynamics Corp. v. Vaughan Co., 355 F.3d 1361, 1370-71 (Fed. Cir. 2004). A case or controversy existed in this case when the case was filed. However, like other courts, this court has considered the events that followed the filing of the complaint to reinforce Monster Cable's claim that a case or controversy existed at the time of the filing of the complaint. See Dunn, 133 F. Supp. 2d at 828 & n.11 (explaining that courts have considered whether the declaratory defendant filed a counterclaim to the declaratory judgment action in evaluating whether a case or controversy exists). Notably, Monster Cable attempts to distinguish Faberge, in which the United States Court of Appeals for the Ninth Circuit considered the defendant's counterclaim as support for finding an actual case or controversy, in part on the basis that Monster Cable has filed no counterclaim in this action. (Def.'s Reply Supp. Mot. Dismiss 4); Faberge, 666 F.2d at 397. However, because Monster Cable filed the instant motion before filing its answer, this argument is unpersuasive, especially given Monster Cable's actions between January and June 2006.

Monster Cable does not dispute Monster Daddy's argument that it has brought suit for trademark infringement multiple times in recent years, including twice in the last two years. (Def.'s Reply Supp. Mot. Dismiss 3.)  Accordingly, Monster Cable's <u>recent</u> litigation history supports the statement in the January Letter that it vigorously protects its trademark rights and supports a reasonable apprehension of imminent suit, especially given the interactions between Monster Cable and Monster Daddy following the January Letter.  <u>See</u> <u>Superguide</u>, 987 F. Supp. at 484 (considering evidence of "defendant vigorously policing its mark through litigation, filing for extension of time to oppose, and actual oppositions to proposed registrations" in determining that the plaintiff had a reasonable apprehension of suit); <u>Dunn</u>, 133 F. Supp. 2d at 828-29 & n.18 (noting that "typically, conduct by the defendant not directed at the plaintiff will not form the basis of a case or controversy," <u>but</u> "[a] different result might obtain, however, were the record to reflect a pattern of practice that creates a reasonable apprehension of imminent litigation").

     In conclusion, the court finds that Monster Daddy had a reasonable apprehension that it was subject to imminent suit by Monster Cable when it filed the instant action.  Moreover, given Monster Daddy's allegations that it has made substantial investment in its Monster Marks and the evidence that Monster Cable has implicitly threatened litigation and continuously voiced vague objections to the Monster Marks and that this activity has harmed Monster Daddy, the court finds that a declaratory judgment action is timely.  Therefore, after careful review and for all of the above reasons, the court denies Monster Cable's motion to dismiss.

Therefore, it is

**ORDERED** that Monster Cable's motion to dismiss for lack of subject matter jurisdiction, docket number 7, is denied.

**IT IS SO ORDERED.**

                                                s/Henry M. Herlong, Jr.
                                                United States District Judge

Greenville, South Carolina
August 1, 2006