IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Monster Daddy, LLC, | ) | |
| | ) | C.A. No. 6:06-293-HMH |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Monster Cable Products, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Monster Cable Products, Inc.'s ("Monster Cable") motion for partial summary judgment on its counterclaim seeking to cancel Monster Daddy, LLC's ("Monster Daddy") United States Trademark Registration No. 3,005,673 for the mark SEA MONSTERS. For the reasons below, the court grants Monster Cable's motion.

## I. FACTUAL & PROCEDURAL BACKGROUND

Monster Daddy is a holding company engaged in the licensing of intellectual property and other assets in the cleaning, marine, and automotive industries. (2d Am. Compl. ¶ 9.) Monster Cable owns numerous trademarks incorporating the term MONSTER, either alone or in combination with other terms, which are used with numerous goods and services. (3d Am. Ans. ¶ 11.) On October 31, 2006, Monster Daddy filed its second amended complaint seeking a declaratory judgment that twenty-one of its alleged marks did not cause a likelihood of confusion with Monster Cable's trademarks, and thus did not infringe or dilute those marks. (2d Am. Compl. ¶ 34.) One of Monster Daddy's trademarks at issue was Registered Trademark 3,005,673 for SEA MONSTERS ("'673 Registration"). (Id. ¶ 9.)

1

In response, Monster Cable filed its third amended answer and counterclaim on February 12, 2007.[1] Count V of Monster Cable's counterclaim seeks attorneys' fees and cancellation of Monster Daddy's '673 Registration on the grounds that this registration was fraudulently obtained, in violation of 15 U.S.C. § 1120 (Section 38 of the Lanham Act). (3d Am. Ans. ¶¶ 37-40.) On February 2, 2007, Monster Cable moved for partial summary judgment on Count V, asserting that "Registration No. 3,005,673 should be cancelled in its entirety." (Def.'s Mem. Supp. Partial Summ. J. 18.)

In its motion for summary judgment, Monster Cable states that the '673 Registration issued on October 11, 2005, from trademark application serial number 78/325,757, which was filed on November 10, 2003, by Monster Daddy.[2] (Id. 2.) In the application, Monster Daddy stated that "[t]he applicant . . . is using the mark in commerce, and lists below the dates of use by the applicant . . . of the mark on or in connection with the identified goods and/or services." (Id. Ex A (Brent A. Capehart Decl. Ex. 1 (78/325,757 Application 5)).) Despite this statement, Monster Cable alleges that "the registration lists over 225 separate goods and services including at least 85 goods and services for which the mark has never been used." (Id. 2.)

---

[1] Monster Cable had previously asserted Count V in its original answer and first and second amended answers, which were filed prior to Monster Cable's motion for partial summary judgment.

[2] Doc Haas, LLC actually filed the application. However, Doc Haas, LLC later merged into Monster Productions, LLC, which ultimately changed its name to Monster Daddy, LLC in February 2006. (Pl.'s Mem. Opp'n Partial Summ. J. 3.) James Carter, who is the sole owner of Monster Daddy, was also an owner of applicant Doc Haas, LLC and executed the application. (Id.)

Further, Monster Cable alleges that Monster Daddy submitted an intentionally altered photograph as a specimen of use relating to "financial sponsorship services of vehicular, marine and motorcross [sic] racing events." (Id. at 4.) Specifically, the photograph depicted a motorcycle and rider participating in the "South Carolina Motorcross [sic] Championship" with the mark SEA MONSTERS located on the rear fender and swing arm of the motorcycle. (Def.'s Mem. Supp. Partial Summ. J. at 4-5.) Monster Cable alleges that at the time of the filing of this specimen of use, Monster Daddy knew that the mark SEA MONSTERS was not actually affixed to the motorcycle in the photograph, and that Monster Daddy was not a sponsor of the Suzuki motocross team. (Id. 5.) In addition, Monster Cable alleges that Monster Daddy did not request that the United States Patent and Trade Office delete goods for which the '673 Registration had not been used in commerce at any time between the issuance of the registration and the commencement of the instant action. (Id. 3.)

Monster Daddy does not dispute the facts as set forth by Monster Cable, but "asserts additional facts that are pertinent to the issues before the Court." (Pl.'s Mem. Opp'n Mot. Partial Summ. J. 2.) Specifically, Monster Daddy asserts that James Carter ("Carter") misunderstood the requirements regarding "use" of the mark in association with all of the goods or services recited in the application. (Id. 3.) Thus, "Carter did not understand that, when filing the statement of use, he was attesting that the trademark was being used on all of the goods recited in the Application." (Id.) Instead, Carter believed "that some of the specimens could be examples of products that I planned to have produced, and not that all of the products had to be available in the marketplace at that time." (Id. Ex. A (Carter Aff.

¶ 7).) With regard to the altered motocross photograph, Carter states that he believed that his use of the mark in the altered photograph on his website illustrating the potential use of the mark constituted "use" for purposes of procuring a trademark registration. (Id.)

Monster Daddy alleges that Carter began investigating whether Monster Daddy could voluntarily surrender those classes of goods and services that were not in actual use when he realized his mistake after the '673 Registration issued. (Id.) Although disputed by Monster Cable, Monster Daddy argues that 37 C.F.R. § 2.161(e)(2) barred Monster Daddy from deleting goods associated with the '673 Registration until the fifth year following the initial registration. (Pl.'s Mem. Opp'n Partial Summ. J. 2; Def.'s Reply Supp. Partial Summ. J. 2-3.) Thus, rather than restricting coverage of the '673 Registration, Carter filed a new application for the SEA MONSTERS mark on November 17, 2005. (Pl.'s Mem. Opp'n Partial Summ. J. 5.) Carter attests that "every action [he] took when [he] submitted the Application, and all actions taken to bring the Application to Registration, were made in good faith" and that he "never intended to mislead anyone or do anything contrary to trademark laws." (Id. Ex. A (Carter Aff. ¶ 17).)

## II. DISCUSSION OF THE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment

"against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

Moreover, "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). With respect to this burden, "it is the responsibility of the plaintiff, not the court, to identify with particularity the evidentiary facts existing in the record which can oppose the defendant's summary judgment motion." Malina v. Baltimore Gas & Elec. Co., 18 F.Supp. 2d 596, 604 (D. Md. 1998).

### B. Monster Cable's Motion

Monster Daddy does not argue that Monster Cable's motion should be denied because of a genuine issue of material fact but contends that Monster Cable's motion should be denied because "the issue of cancellation of the mark is moot and . . . Monster Cable has shown neither damages arising from the prior registration of the mark nor entitlement to attorneys' fees." (Pl.'s Mem. Opp'n Summ. J. 5-6.) "A third party may petition to cancel a registered

5

service mark on the grounds that the registration was obtained fraudulently." Metro Traffic Control, Inc. v. Shadow Network, Inc., 104 F.3d 336, 340 (Fed. Cir. 1997). As discussed above, Monster Daddy has surrendered the '673 Registration. Therefore, to the extent Monster Cable is seeking cancellation of the '673 Registration, its motion for partial summary judgment is moot. However, Monster Cable asserts that it is additionally seeking damages, including attorneys' fees, as a result of Monster Daddy's allegedly fraudulent conduct in procuring the '673 Registration. (Def.'s Reply Supp. Partial Summ. J. 4-5.)

15 U.S.C. § 1120 provides that

> [a]ny person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

"Fraud in procuring a mark occurs when an applicant knowingly makes false, material representations of fact in connection with an application." L.D. Kichler Co. v. Davoil, Inc., 192 F.3d 1349, 1351 (Fed. Cir. 1999) (internal quotation marks omitted). There is no dispute over whether Carter falsely represented in the SEA MONSTERS application that he was using the mark on 85 goods and services for which the mark has never been used.

Monster Daddy admits that it falsely stated in the SEA MONSTERS application that "[t]he applicant, or the applicant's related company or licensee, is using the mark in commerce" despite the fact that the mark had never been used for at least 85 goods and services listed in the application and subsequent registration. (Pl.'s Mem. Opp'n Partial Summ. J. 2 n.2; Def.'s Mem. Supp. Summ. J. 2-3.) In addition, Monster Daddy admits that at the time the application was filed, it had knowledge that it had not used the SEA

MONSTERS mark in commerce on or in connection with at least 85 of the goods and services set forth in the application. (Pl.'s Mem. Opp'n Partial Summ. J. 2 n.2; Def.'s Mem. Supp. Summ. J. 3.) The fact that Carter alleges that he did not understand that, when filing the statement of use, he was attesting that the trademark was being used on all of the goods recited in the application is irrelevant. "The appropriate inquiry is . . . not into the registrant's subjective intent, but rather into the objective manifestations of that intent." Medinol Ltd. v. Neuro Vasx, Inc., 67 U.S.P.Q.2d 1205, 1209 (T.T.A.B. May 13, 2003); see also Torres v. Cantine Torresalla S.r.l., 808 F.2d 46, 49 (Fed. Cir. 1986) ("If a registrant files a verified renewal application stating that his registered mark is currently in use in interstate commerce . . . when, in fact, he knows or should know that he is not using the mark as registered . . . he has knowingly attempted to mislead the [Patent and Trademark Office].")

It is undisputed that in the SEA MONSTERS mark application, Carter stated that Monster Daddy (then Doc Haas, LLC) was using the mark in commerce at the time of filing with regard to 85 goods and services when, in fact, it was not. (Def.'s Mem. Supp. Summ. J. Ex. A (Brent A. Capehart Decl. Ex. 1 (78/325,757 Application 5)).) This application led to the procurement of the '673 Registration by Monster Daddy. Because damages are available to any person injured by such false representations, Monster Cable's motion for partial summary judgment is not moot. Monster Cable has not yet presented its damages claim. However, at this stage, Monster Daddy fails to demonstrate that Monster Daddy, as a matter of law, is not entitled to damages arising from the procurement of the '673

Registration.  Based on the foregoing, the court grants Monster Cable's motion for partial summary judgment.

Therefore, it is

**ORDERED** that Monster Cable's motion for partial summary judgment, docket number 55, is granted.

**IT IS SO ORDERED**.

                                                s/Henry M. Herlong, Jr.
                                                United States District Judge

Greenville, South Carolina
July 27, 2007